IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| GINO RODEGHIER, | |
|---|---|
| Plaintiff, | 4:19-CV-3076 |
| vs. | MEMORANDUM AND ORDER |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiff Gino Rodeghier claims that the United States of America, through employees of the Department of Veterans Affairs (VA), invaded his privacy by impermissibly accessing his personal medical records. Rodeghier brought suit under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (FTCA).

Before the Court is the United States' motion to dismiss (filing 14) for lack of subject matter jurisdiction and failure to state a claim. It contends that the Civil Service Reform Act (CSRA) provides Rodeghier's sole remedy, and also precludes Rodeghier's claim under the FTCA.

For the reasons set forth below, the United States' motion will be granted.

I. BACKGROUND

Rodeghier served as a police officer with the VA Nebraska-Western Iowa Health Care System (NWI-VA) from March 2010 until December 2018. Filing 10 at 4. Most recently he acted as Deputy Chief of Police Services for Omaha-Lincoln and in April 2018 he was temporarily appointed Acting Chief of Police

while administrators conducted a search for a permanent chief. *See* filing 10 at 4, 9.

On June 18, 2018, Rodeghier injured himself in an off-duty motorcycle accident. Filing 10 at 4. He took about fourteen days off to recover from his injuries before returning to work and his regular duties, with some restrictions set by his non-VA treatment provider. Filing 10 at 4.

On July 24,[1] Rodeghier attended a mandatory range training and qualification for the police department with range instructor Captain Christopher Di Leonardo. Filing 10 at 5. Rodeghier alleges he passed the assessment, but that Di Leonardo told Rodeghier he did not think Rodeghier was ready to return to full duty. Filing 10 at 5. According to Rodeghier, Di Leonardo then required him to complete advanced tactical response maneuvers which caused severe pain in his injured knee. Filing 10 at 6. At the end of the assessment, Di Leonardo asked for Rodeghier's badge and told Rodeghier he was not fit for duty. Filing 10 at 6. Rodeghier contends that Di Leonardo's actions violated several VA policies. Filing 10 at 5-6.

From July 26 to August 17 Rodeghier was placed on limited duty with no running by his VA primary care provider due to his injuries. Filing 10 at 4. Rodeghier says that the restrictions did not prevent him from performing his essential functions as an administrator. Filing 10 at 6. But on July 31, Julie Rickert, Associate Director of the NWI-VA, delivered a memorandum to Rodeghier that suspended his arrest authority. Filing 10 at 6; filing 20-1 at 2-3. It was signed by Don Burman, Director of the NWI-VA, who met with Di

---

[1] All of the remaining dates in this section refer to calendar year 2018.

Leonardo and VISN 23 Police Chief Rick Encinas[2] before issuing the memo. Filing 20-1 at 3.

On August 1, Rodeghier was reassigned to the mail room. Filing 10 at 6. According to Rodeghier, his reassignment was solely related to an Administrative Investigation Board inquiry regarding a complaint that Rodeghier made a derogatory statement to a female employee, and had nothing to do with his motorcycle accident or fitness for duty. Filing 10 at 5; filing 20-1 at 3.

On August 16,[3] while Rodeghier was on scheduled leave, Rickert allegedly contacted him, revoked his leave, and demanded he return to assist with a case. Filing 10 at 7; filing 20-1 at 4. The next day, Rodeghier's physician released him to full duty with no limitations and Rodeghier returned to work, but remained assigned to the mail room because of the administrative inquiry. Filing 10 at 7; filing 20-1 at 4.

On August 24, Dr. Mary Wampler, VA Omaha Occupational Health, allegedly called Rodeghier's personal cell phone and told him Rickert had demanded access to Rodeghier's personal veteran medical file and a release for all doctor's notes from his motorcycle accident. Filing 10 at 7. Rodeghier says he denied access and asked Wampler to confirm she would not access his medical records. Filing 10 at 7. And on September 4, Rodeghier called Wampler to verify Rickert's request for his records and she allegedly denied accessing

---

[2] Encinas would later serve as Acting Police Chief for the NWI-VA from approximately October 12, 2018 until after Rodeghier's resignation in December 2018. Filing 15-1 at 2. Encinas held that position while the newly hired police chief completed training. *Id*.

[3] There is a discrepancy in the date of Rickert's alleged contact. Rodeghier's complaint says it happened August 16, (filing 10 at 7) while his declaration says August 18 (filing 20-1 at 4). The exact timing of this event is inconsequential, so the Court uses the date in the complaint.

his records. Filing 10 at 8; filing 20-1 at 4. Wampler forwarded an email between herself and Pamela Hirsh, Director of Occupational Health in Washington, D.C. *See* filing 10 at 8. The email from Hirsch appears to advise Wampler on the proper process for evaluating an employee's fitness for duty.[4] *See* filing 10 at 8. But Wampler did not send Rodeghier any communication between her and Rickert. Filing 10 at 8-9; filing 20-1 at 4.

On September 13, Rodeghier received a report from the VA Omaha privacy office confirming that Wampler had in fact accessed his personal medical file several times, including on August 24. Filing 10 at 9. The report also showed that one of Wampler's subordinates, Kristin Lyon, had accessed Rodeghier's file on July 24—the day of his range training and assessment with Di Leonardo. Filing 10 at 9.

In mid-to-late November, Steven McCarver, newly hired Chief of Police, scheduled a meeting with Rodeghier. Filing 10 at 9. According to Rodeghier, at the meeting, McCarver discussed the outcome of the Administrative Investigation Board inquiry. Filing 10 at 9. McCarver allegedly indicated he did not have major concerns about Rodeghier, and intended to have Rodeghier take an "EEO-sensitivity training class" but be restored to Deputy Chief immediately. Filing 10 at 9. Approximately one week later, Rodeghier found out that McCarver was disciplined by Rickert for the conversation. Filing 10 at 10. According to Rodeghier, Rickert was also re-interviewing staff because she was not satisfied with employee responses during the administrative investigation, and wanted Rodeghier's "head on a platter." Filing 10 at 10.

Rodeghier believes that Rickert was upset by his refusal to allow access to his personal medical record and his subsequent request for a report from the

---

[4] The alleged text of the email from Hirsch to Wampler is contained in Rodeghier's complaint. Filing 10 at 8. However, the initial email from Wampler to Hirsch is omitted.

VA privacy office which showed allegedly improper access. Filing 10 at 10. Rodeghier also believes that multiple individuals involved in the administrative investigation received confidential information from his medical records. Filing 10 at 10.

Rodeghier alleges that Wampler's unauthorized access to his medical records was directed by Rickert, Encinas, and/or Burman. Filing 10 at 10. According to Rodeghier, the information was obtained in order to discredit or humiliate him, and the resulting embarrassment, pain and humiliation caused his resignation on December 26. Filing 10 at 11.

Rodeghier now sues the United States claiming Wampler's access to his medical records was an invasion of privacy and therefore actionable under the FTCA. *See* filing 10 at 11-14. Rodeghier seeks general damages for emotional distress and humiliation, and lost income and benefits of employment "in the minimal amount of $324,000." Filing 10 at 14.

## II. STANDARD OF REVIEW

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges whether the court has subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008). A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack'" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id*. Conversely, in a factual attack, the existence of subject

matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered. *Branson Label,* 793 F.3d at 914. And factual challenges also arise when a court inquires into and resolves factual disputes. *Faibisch v. Univ. of Minnesota,* 304 F.3d 797, 801 (8th Cir. 2002). Where a court questions the type of relief sought and makes factual determinations about the availability of that relief, the review is factual in nature. *Id.*

Here, the Court is deciding a factual attack, because it considered affidavits submitted by both parties and also made factual determinations about the relief sought by Rodeghier and the availability of that relief. *See Croyle ex rel. Croyle v. United States,* 908 F.3d 377 (8th Cir. 2018) (affirming dismissal of FTCA claim for lack of subject matter jurisdiction under discretionary function exception); *Faibisch,* 304 F.3d at 801.

### III. DISCUSSION

The United States primary argument in support of dismissal is that the CSRA is Rodeghier's exclusive remedy and precludes this action under the FTCA. *See generally* filing 16. It contends that Rodeghier's complaint, in essence, alleges constructive termination following a lengthy employment dispute that incidentally involved unauthorized access to Rodeghier's medical records. *See* filing 16 at 9-10. So, the United States reasons, the CSRA's "comprehensive framework for review of federal personnel actions" preempts Rodeghier's lawsuit and denies the Court subject matter jurisdiction. Filing 16 at 8; *see Elgin v. Dep't of Treasury,* 567 U.S. 1, 5 (2012). The Court agrees.

The CSRA prescribes in great detail the protections and remedies applicable to adverse personnel actions against most[5] federal employees. *Elgin,* 567 U.S. at 11 (quoting *United States v. Fausto,* 484 U.S. 439, 443 (1988)). Under the CSRA:

> Any employee who has authority to take, recommend, or approve any personnel action, shall not, with respect to such authority—
>
> . . .
>
> (2) solicit or consider any recommendation or statement, oral or written, with respect to any individual who requests or is under consideration for any personnel action unless such recommendation or statement is based on the personal knowledge or records of the person furnishing it and consists of—
>
>     (A) an evaluation of the work performance, ability, aptitude, or general qualifications of such individual; or
>
>     (B) an evaluation of the character, loyalty, or suitability of such individual;
>
> . . .
>
> (12) take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title;
>
> . . .

---

[5] Rodeghier does not dispute that the CSRA applies to his employment with the VA. *See* filing 19 at 1-3. However, some federal employees are specifically exempt from the statutory scheme. *See* 5 U.S.C. § 2302(a)(2)(C); *Turner v. U.S. Dep't of Justice,* 815 F.3d 1108 1108, 1109 (8th Cir. 2016).

> (14) access the medical record of another employee or an applicant for employment as part of, or otherwise in furtherance of any conduct described in [§ 2302(b)(1)-(13)].

5 U.S.C. § 2302(b).

Personnel action, for purposes of section 2302(b), includes "an action under [title 5 chapter 75—adverse actions] or other disciplinary or corrective action;" "a detail, transfer, or reassignment;"; and "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A). And termination and constructive termination are adverse personnel actions covered by the CSRA. *See Elgin,* 567 U.S. at 22-23; *Richards v. Kiernan,* 461 F.3d 880 (7th Cir. 2006); *Braun v. Dep't of Veterans Affairs,* 50 F.3d 1005, 1007 (Fed. Cir. 1995); *Heitman v. United States,* 902 F.2d 39 (9th Cir. 1990); *Premachandra v. United States,* 739 F.2d 392 (8th Cir. 1984).

The CSRA provides the exclusive means for most federal employees to challenge adverse personnel actions. *See Premachandra,* 739 F.2d at 394; *Frazier v. Merit Sys. Prot. Bd.,* 672 F.2d 150, 154-55 (D.C. Cir. 1982). And courts have consistently held that the CSRA specifically preempts claims under the FTCA concerning prohibited personnel practices. *See, e.g., Mangano v. United States,* 529 F.3d 1243, 1247-48 (9th Cir. 2008); *Premachandra,* 739 F.2d at 393-94.

In response to the United States' motion, Rodeghier makes two arguments: (1) he included facts in his complaint that point to "animosity" between himself and Rickert to allege intentional and not accidental invasion of privacy; and (2) Wampler's access to Rodeghier's medical records on August 24, 2018 was not related to any personnel action. Rodeghier reasons that Wampler's invasion of his privacy is therefore not covered by the CSRA and actionable under the FTCA. The Court is not persuaded.

First, while Rodeghier may have meant for his "recitation of concurring events" to solely demonstrate intentional conduct, those events also show an ongoing employment dispute concerning Rodeghier. Rodeghier admits that he was the subject of an administrative inquiry from at least August through November for allegedly making a derogatory statement to a female employee. Rodeghier also says that in November, when he talked to newly hired Police Chief McCarver, he was told he would need to complete EEO sensitivity training. And Rodeghier claims that Rickert disciplined McCarver for his conversation with Rodeghier and wanted to perform additional investigation after the conclusion of the administrative inquiry. Finally, Rodeghier was never restored to police duty prior to his resignation at the end of December.

At substantially the same time, Rodeghier was dealing with an injury that, at least according to Di Leonardo, Burman, and Encinas, affected his fitness for duty as a police officer. While Rodeghier asserts that he could still perform his essential functions, it is clear from the pleadings and evidence that the administration believed otherwise. And Rodeghier himself suggests that Wampler accessed his personal medical file at the direction of Rickert, Burman and/or Encinas to "discredit or humiliate" him. The Court does not know what Rodeghier's personal medical file contained, or how that information was used, but it is clear that Rodeghier was entangled in an ongoing dispute with his superiors regarding his ability to perform his duties.

The employment dispute set out in the pleadings and evidence is squarely within the ambit of the CSRA. There were multiple personnel actions taken by various members of the NWI-VA administration concerning Rodeghier, including the revocation of his police and arrest authority, his reassignment to the mail room, and his eventual resignation. And Rodeghier alleges that his personal medical record was accessed on at least two occasions

without his permission—once on the day of his firing range assessment by Lyon, and again a month later by Wampler. Furthermore, Rodeghier alleges that Di Leonardo, Rickert, and others violated other VA policies throughout the dispute. Simply put, Rodeghier alleges facts that, if proven, would state a claim for a prohibited personnel practice under § 2302.

Second, the Court cannot reasonably distinguish Wampler's access to Rodeghier's personal medical file *at the direction* of VA administrators from the ongoing employment dispute and Rodeghier's resulting resignation. As stated above, Rodeghier's alleged invasion of privacy occurred in the context of an ongoing employment dispute. And Rodeghier claims that Rickert was motivated to access his medical records by his argument with Di Leonardo at the firing range which resulted in the suspension of his police authority.

Rodeghier asserts that Wampler's access to his personal medical record was unrelated to any personnel action because Lyons had already accessed Rodeghier's file on July 24—the day of his argument with Di Leonardo. In other words, Rodeghier would like the Court to conclude that if a prohibited personnel practice and personnel action do not happen *at the exact same time* then the CSRA does not apply. But Rodeghier cites no authority for this proposition, and the Court finds no support for Rodeghier's argument in the statute or case law. Rodeghier himself alleges that Wampler's access to his personal medical record was a cause of his resignation. Just because the unauthorized access and resignation occurred several months apart does not mean that they are unrelated for purposes of the CSRA. And especially on the facts before the Court—which indicate an ongoing, months-long, employment dispute—this argument is unpersuasive.

At bottom, Rodeghier's claim is one for constructive termination. *See Premachandra*, 739 F.2d at 393. According to Rodeghier, his personal medical

record was accessed with the intent to discredit and humiliate him, and that he was in fact humiliated enough to resign his position. His prayer for damages—which include damages for lost income and benefits of employment—demonstrate that fact. The Court concludes that the CSRA provides Rodeghier's exclusive means of redress, and therefore the Court does not have subject matter jurisdiction. *See Elgin*, 567 U.S. at 11-12.

IT IS ORDERED:

1. Defendant's motion to dismiss (filing 14) is granted.

2. Rodeghier's amended complaint (filing 10) is dismissed without prejudice.

3. A separate judgment will be entered.

Dated this 24th day of March, 2020.

BY THE COURT:

*[signature: John M. Gerrard]*

John M. Gerrard
Chief United States District Judge